**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| LEROY BOWIE, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. AW-06-1172 |
| | * | |
| CINCO of Maryland, Inc., *et al.* | * | |
| | * | |
| Defendants. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM OPINION

This action involves a complaint under the Fair Labor Standards Act ("FLSA") by several former employees ("Plaintiffs") of Greenwald Industrial Products Company, Inc. ("GIP") against GIP's successor company, CINCO of Maryland, Inc. ("CINCO"), and David Greenwald, personally as CEO of GIP (collectively, "Defendants") to recover unpaid back wages and overtime pay. Currently pending before the Court is Defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment [5]. The Court has reviewed the entire record, as well as the Pleadings with respect to the instant motion and the oral arguments of counsel for the parties. For the reasons stated below, the Court will GRANT Defendants' Motion to Dismiss.

### FACTUAL AND PROCEDURAL BACKGROUND

On both a motion to dismiss and a motion for summary judgment, the facts are taken in the light most favorable to the nonmoving party. Therefore, the Court gleans the relevant facts from Plaintiffs' Complaint. Plaintiffs are adult residents of the State of Maryland. Defendant CINCO is a Maryland corporation, and is the legal successor to Greenwald Industrial Products Company, Inc. ("GIP"). During the period of employment, both Defendants and Plaintiffs were engaged in commerce or in the production of goods for commerce as required by the FLSA.

Plaintiffs began employment with GIP on or before May 9, 2003.  Plaintiffs, as employees of GIP, were all paid an hourly wage, and all regularly worked over forty (40) hours in many work weeks.  Plaintiffs were not compensated for the work they performed over forty (40) hours at the rate of one-and-one-half (1.5) times Plaintiffs' regular hourly pay rate.  On February 28, 2005, GIP entered into an Asset Purchase Agreement with White Cap Construction Supply, Inc. ("White Cap").  The agreement transferred substantially all of GIP's assets to White Cap, including the warehouse and business where Plaintiffs were employed.  On that same day, GIP amended its charter to change its name to CINCO of Maryland, Inc.  White Cap assumed control of the operations of the facility where Plaintiffs worked, and began paying Plaintiffs overtime wages beginning in or around February 2005.[1]

## STANDARD OF REVIEW

A court must deny a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief."  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In determining whether to dismiss a complaint pursuant to Rule 12(b)(6), this Court must view the well-pleaded material allegations in the light most favorable to the plaintiff and accept the factual allegations contained within the plaintiff's complaint as true.  *See Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997) (citing *Estate Constr. Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 217-18 (4th Cir. 1994)); *Chisolm v. TranSouth Finan. Corp.*, 95 F.3d 331, 334 (4th Cir. 1996).  The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation."  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citing *Briscoe v. LaHue*, 663 F.2d

---

[1] The circumstances behind White Cap's decision to provide Plaintiffs with overtime wages are not relevant to this case.

713, 723 (7th Cir. 1981)); *Young v. City of Mount Ranier*, 238 F.3d 576, 577 (4th Cir. 2001) (the mere "presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)"). Nor is the Court "bound to accept [Plaintiffs'] conclusory allegations regarding the legal effect of the facts alleged." *United Mine Workers of Am. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1994); *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Therefore, a complaint may be dismissed as a matter of law only if it lacks a cognizable legal theory *or* if it alleges insufficient facts to support a cognizable legal theory. *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984) (citing 2A J. Moore, Moore's Federal Practice ¶ 12.08 at 2271 (2d ed. 1982)).

## ANALYSIS

As a preliminary matter, the Court must address Plaintiffs' claim against Defendant David Greenwald. Because Greenwald was the CEO of GIP, Plaintiffs argue that he should be held personally liable on GIP's failure to pay overtime wages. Defendants argue that Greenwald was never Plaintiffs' employer and neither owned GIP nor any shares of GIP. The parties do not dispute that the FLSA provides a very broad definition of the word "employer." *See* 29 U.S.C. § 203(d) (defining employer as "any person directly or indirectly in the interest of an employer in relation to an employee . . ."). The FLSA also contemplates individual and joint liability under the term "employer," and courts have uniformly so held. *See, e.g.*, *Brock v. Hamad*, 867 F.2d 804, 809 n.6 (4th Cir. 1989); *Donovan v. Agnew*, 712 F.2d 1509, 1511-14 (1st Cir. 1983); *Donovan v. Sabine Irrigation Co. Inc.*, 695 F.2d 190, 194-95 (5th Cir. 1983), *cert. denied*, 463 U.S. 1207 (1983). Numerous cases have found one or more principals of a corporate employer to be liable as "employers" for wage violations, particularly where the individuals are responsible for payment of

3

wages to employers. *See, e.g.*, *Moon v. Kwon*, 248 F. Supp. 2d 201 (S.D.N.Y. 2002); *Chao v. Vidtape, Inc.*, 196 F. Supp. 2d 281 (E.D.N.Y. 2001); *Herman v. Hogar Praderas de Amor, Inc.*, 130 F. Supp. 2d 257 (D. Puerto Rico 2001); *Duncan v. Perdue*, 988 F. Supp. 992 (W.D. Va. 1997); *Gusdonovich v. Business Information Co.*, 705 F. Supp. 262 (W.D. Pa. 1985). However, there is no evidence here that Greenwald was directly responsible for the payment of wages to Plaintiffs. The mere fact that he was CEO of the company does not impute to him all responsibility for the company. The Court is obliged to respect the corporate form, unless there is some reason to pierce the corporate veil. The facts of this case do not necessitate reaching behind the corporate wall. As such, Plaintiffs' claims against Defendant David Greenwald must be dismissed.

The next issue is whether Plaintiffs' Complaint sufficiently states a claim against Defendant CINCO. The FLSA sets forth rules and regulations regarding the workplace environment for certain categories of workers. *See* 29 U.S.C. § 201, *et seq.* Relevant to the instant case, the FLSA provides that

> no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate *not less than one and one-half times the regular rate* at which he is employed.

29 U.S.C. § 207 (emphasis added). However, the FLSA's overtime provisions do not apply to "employee[s] with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act." *Id.* § 213; *see also* 49 U.S.C. § 31502. Among these employees are "loaders" employed by private motor carriers when the loaders are responsible for promoting public safety in the transporting of goods in commerce. For purposes of the motor carrier exemption, "loader" is

defined as

> an employee . . . whose duties include, among other things, the proper loading of his employer's motor vehicles so that they may be safely operated on the highways of the country. A 'loader' may be called by another name, such as 'dockman,' 'stacker,' or 'helper,' and his duties will usually also include unloading and the transfer of freight between the vehicles and the warehouse, but he engages, as a 'loader,' in work directly affecting "safety of operation" *so long as he has responsibility when such motor vehicles are being loaded, for exercising judgment and discretion* in planning and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate or foreign commerce will not be jeopardized.

29 C.F.R. § 782.5 (emphasis added).

The parties disagree as to whether Plaintiffs were in fact "loaders" as defined by the Federal Register and thus exempt from the overtime wage requirements. Defendants claim that the action should be dismissed because, as loaders, Plaintiffs were not entitled to increased overtime wages. Defendants proffer the affidavit of Warren Smith in support of their contention that Plaintiffs were in fact loaders.[2] Plaintiffs, on the other hand, contend that they did not have any responsibilities associated with the safety of the boxes and other materials they moved, nor did Plaintiffs have duties associated with the safety of the drivers of the trucks they loaded or other drivers on the road. Moreover, Plaintiffs attest that at no time during their employment with GIP did they have the authority to make decisions regarding the safety of boxes and other materials, the safety of drivers or other drivers on the road, nor did Plaintiffs ever make such a safety decision. Hence, the Plaintiffs claim, they were not loaders for the purposes of the Motor Carrier Act exemption.

Defendants rely principally on the Fourth Circuit case of *Blankenship v. Thurston Motor*

---

[2] Incidentally, Warren Smith was once a named Plaintiff in this action. For some reason unknown to the Court, and apparently unknown to the parties, Mr. Smith has voluntarily dismissed his claim against Defendants and has instead signed an affidavit supporting Defendants' position.

*Lines, Inc.*, 415 F.2d 1193 (4th Cir. 1969). Similar to Plaintiffs' argument here, the plaintiffs in that case argued that a loader must be "trusted with ultimate responsibility for the safe loading of his employer's trucks, if he is to come within the Commission's definition of 'loaders.'" *Blankenship*, 415 F.2d at 1196 n.3. However, the *Blankenship* court held that:

> [t]his interpretation is not warranted by the text of [the Commission's Opinion], or court decisions interpreting that opinion. What the Commission intended to cover was the physical act of loading freight in a safe manner so that the trucks might be operated safely on the highways. Certainly every workman is responsible for doing his job well, even though his labor may be supervised closely and checked for accuracy by his supervisors. If safety depended upon the supervision and checking of the 'boss,' no one could depend upon the safety of trucks that were not so checked. Rather, safety depends upon the efforts of loaders who know what they are doing, who do the job the way it is to be done, and who are responsible for their actions. If, as in the case at bar, their actions directly affect the safety of the trucks they load, they fall within the Commission's definition of 'loaders' and are excepted from the overtime provisions of the Fair Labor Standards Act.

*Id.* In rebuttal, Plaintiffs offer a March 5, 2001 opinion letter of Thomas M. Markey, then-Acting Administrator of the Wage and Hour Division of the Department of Labor addressing the definition of the term "loader." The letter states that:

> Loaders are those employees who, when vehicles are being loaded, *have responsibility for exercising judgment and discretion in planning and building a balanced load* or in placing, distributing or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate and foreign commerce will not be jeopardized. 29 C.F.R. 782.5(a). In addition, *an employee is not a loader merely because he furnishes physical assistance when necessary in loading heavy pieces of freight, or because he does the physical work of arranging pieces of freight in the vehicle where another employee tells him exactly what to do in each instance and he is given no share in the exercise of discretion as to the matter in which the loading is done.* 29 C.F.R. 782.5(c). Thus, only those of the ''team loaders'' who exercise the judgment and discretion necessary to determine that [equipment has] been loaded safely on the trailer would qualify for the section 13(b)(1) overtime exemption.

2001 WL 1558956 DOL Wage-Hour (March 5, 2001) (emphasis added).

The very narrow question before the Court is whether Plaintiffs were in fact "loaders" as

contemplated by the Motor Carrier Act. Plaintiffs seem to hang their hats on the language in the Administrator's opinion regarding the employee's discretion or lack thereof. However, this language cannot be taken out of context. The situation described in the Administrator's opinion is simply not the facts of the present case. Plaintiffs were not furnishing physical assistance when needed; rather, they were continually and systematically engaged in the loading and unloading of commercial freight. The Court finds that Plaintiffs are "loaders" within the meaning of the Motor Carrier Act, and are therefore exempt from the overtime wage requirements of the FLSA. Further, the Court believes that the *Blankenship* case is dispositive of this issue at hand. Therefore, Plaintiffs' Complaint cannot survive a Rule 12(b)(6) attack.

As a further matter, Plaintiffs do not and cannot argue that loading is such a trivial part of their job description as to make the "loader" aspect of their job *de minimis*. *See Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 708 (1947) (explaining that the "mere handling of freight at a terminal, before or after loading, or even the placing of certain articles of freight on a motor carrier truck may form so trivial, casual or occasional a part of an employee's activities, or his activities may relate only to such articles or to such limited handling of them, that his activities will not come within the kind of 'loading' which is described by the Commission and which, in its opinion, affects safety of operation"). As a result, the *de minimis* rule does not apply to these Plaintiffs.

## **CONCLUSION**

Plaintiffs have undoubtedly worked longer than 40 hours during several weeks of the relevant time period, and were not paid overtime wages for these extra hours. However, this does not reflect any failure to properly compensate Plaintiffs on the part of their former employer. Plaintiffs belong to a class of employees who are simply not legally entitled to increased overtime

pay. Therefore, this Court cannot grant them the relief they request. For the reasons stated above, the Court will grant Defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment [5]. An Order consistent with this opinion will follow.

  October 27, 2006                                                                             /s/
          Date                                                                           Alexander Williams, Jr.
                                                                                           United States District Judge